IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| HONG JAE KIM,<br><br>      Petitioner,<br><br>v.<br><br>TRACY JOHNS,<br><br>      Respondent. | CIVIL ACTION NO.: 5:20-cv-95 |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Hong Kim ("Kim"), who is currently incarcerated at the Dalby Correctional Institution in Post, Texas, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas while he was housed at D. Ray James Correctional Facility in Folkston, Georgia. Doc. 1. Respondent filed a Motion to Dismiss, and Kim filed a Response. Docs. 3, 6. For the following reasons, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss and **DISMISS without prejudice** Kim's Petition for failure to exhaust his administrative remedies. I further **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Kim leave to appeal *in forma pauperis*.

### BACKGROUND

In his Petition, Kim states Respondent exposed him to an unreasonable risk of serious harm to his future health because Respondent did not take appropriate safety measures regarding COVD-19. Doc. 1 at 2. Kim also states Respondent would not schedule deportation hearings or allow him entry into sentence reduction programs. Id. at 2–3. As relief, Kim asks for a declaration his confinement violates the Eighth Amendment, placement on home confinement,

and a hearing. Id. at 3. Respondent moves to dismiss Kim's Petition based on Kim's failure to exhaust his administrative remedies, the lack of subject matter jurisdiction, and failure to show an Eighth Amendment violation. Doc. 3.

In his Response, Kim states he is housed in a facility operated by a private company and cannot apply to the Bureau of Prisons (BOP") for relief, though he attempted to exhaust his administrative remedies. Doc. 6 at 2. Kim also states his confinement itself violates his right to due process, which is a challenge to the validity of his detention. Id. at 3. Further, Kim notes this Court can order he be released to home confinement and can review his request to have immigration proceedings commence. Id. at 4.

## DISCUSSION

I.  **Whether Kim Exhausted his Administrative Remedies**

   A.  **Legal Requirements for Exhaustion**

The Eleventh Circuit Court of Appeals has held a § 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d at 475).[1] Failure

---

[1] The Court notes, in certain circumstances, it should not determine exhaustion issues. Specifically, in Jenner v. Stone, this Court noted, "Although exhaustion of administrative remedies is not a jurisdictional requirement in a § 2241 proceeding, 'that does not mean that courts may disregard a failure to exhaust and grant relief on the merits if the respondent properly asserts the defense.'" Jenner v. Stone, No. CV 317-068, 2018 WL 2976995, at *2 (S.D. Ga. May 16, 2018), *report and recommendation adopted*, 2018 WL 2972350 (S.D. Ga. June 13, 2018) (quoting Santiago-Lugo, 785 F.3d at 474–75).

2

to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). Additionally, the United States Supreme Court has "held that the PLRA's ["Prison Litigation Reform Act's"] text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016).

The requirement the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[2]

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements

---

"However, 'a court may skip over the exhaustion issue if it is easier to deny . . . the petition on the merits without reaching the exhaustion question." Id. (quoting Santiago-Lugo, 785 F.3d at 475).

[2]   Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

3

define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

**B.      Standard of Review for Exhaustion**

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" lower courts must employ when examining the issue of exhaustion of

4

administrative remedies.³ First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

  **C.**  **Analysis of Kim's Efforts at Exhaustion**

Attached to his Petition, which was executed on July 19, 2020, Kim submitted a copy of a Regional Administrative Remedy Appeal ("BP-10") concerning his removal proceedings and being able to avail himself of programs designed to allow his early release. Doc. 1 at 4. The Remedy Appeal is dated June 18, 2020, but it lacks an appeal number. Id.

Inmates at D. Ray James must exhaust administrative remedies, beginning their grievance process locally with the Warden by using the contractor's grievance procedures.⁴ This involves

---

³  Although Turner involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in Turner would be no less applicable to a § 2241 proceeding. See McCoy v. Glidewell, Civil Action No. 4:11-cv-1683, 2012 WL 3716872, at *5 (D.S.C. June 18, 2012) (noting § 2241's exhaustion requirements and Turner's application of exhaustion standards to a § 2241 petition).

⁴  It has been the Court's experience inmates at D. Ray James Correctional Facility were to use the contractor's grievance procedures for exhaustion purposes, which vary slightly from the BOP's administrative remedies process, although both procedures require a final appeal with the Office of

an attempt at informal resolution, which, if unsuccessful, is followed by a formal complaint via a Step 1 administrative remedy form within 20 days of the informal resolution request. An inmate may appeal the Step 1 administrative remedy to the Warden via a Step 2 administrative remedy form within five business days after the Step 1 response is returned. If the inmate is not satisfied with the resolution of the formal complaint, the inmate may appeal to the BOP's Administrator of the Privatization Management Branch (BP-10), so long as the appeal involves BOP-related matters. Betancur v. Johns, Civil Action No.: 5:15-cv-87, 2016 WL 6396016, at *4 (S.D. Ga. Oct. 26, 2016), *adopted by* 2016 WL 7257000 (S.D. Ga. Dec. 14, 2016). Examples of BOP-related matters which must be appealed through the BOP are: sentence computations, reduction in sentences, removal or disallowance of good conduct time, participation in certain programs, and an inmate's eligibility for early release. Pichardo v. Zenk, Civil Action No.: CV511-069, 2011 WL 5102814, at *2 n.4 (S.D. Ga. Sept. 27, 2011), *adopted by* 2011 WL 5103758 (S.D. Ga. Oct. 26, 2011). If the inmate is not satisfied with the Privatization Administrator's response, the inmate may make a final appeal to the BOP's Office of General Counsel (BP-11). If an inmate files an administrative remedy concerning a BOP-related matter, the administrative remedies will be recorded in the BOP's SENTRY computer database. Betancur, 2016 WL 6396016, at *4.

Respondent notes Kim attached a copy of a BP-10 to his Petition, but the BOP has no record of receipt of this filing. Doc. 3 at 3. In addition, Respondent asserts, even if Kim did file a BP-10, the failure to respond to that filing is deemed a denial at that level. Kim still had to file a BP-11 with the Office of General Counsel to exhaust his available administrative remedies. Id. at 4. Respondent submits the Declaration of Jason White, an attorney-advisor for the BOP's

---

General Counsel. See, e.g., Martinez v. Johns, Civil Action No.: 5:17-cv-120, 2017 WL 4934674, at *3 (S.D. Ga. Oct. 31, 2017), *adopted by* 2017 WL 6029622 (S.D. Ga. Dec. 5, 2017); Doc. 3 at 3.

6

Southeast Regional Office, as support of his position Kim did not exhaust his administrative remedies. Doc. 3-1. Mr. White declares Kim did not submit "any administrative remedies with the BOP relating to his request for a deportation hearing or [Eighth] Amendment concerns regarding COVID-19 . . . ." Id. at 3. In addition, Mr. White declares Kim does not "allege or demonstrate" he submitted a BP-11 appeal, even assuming Kim filed at the BP-10 level. Id.

In response to the Motion to Dismiss, Kim does not assert he filed an appeal to the Office of General Counsel, or the BP-11, level. Doc. 6. Instead, Kim maintains he cannot apply to the BOP for relief. In addition, Kim states he attempted to exhaust his remedies, as indicated by the BP-10 attached to his Petition. Id. at 2. Kim contends the circumstances of his mail not reaching the Privatization Management Branch should be investigated and he has submitted his BP-10 in another habeas proceeding, which is no longer pending. Id.

The evidence before the Court reveals Kim has not filed any administrative remedy requests for the BOP-related matters he raises in his Petition. The only evidence before the Court regarding Kim's attempts at exhaustion reveals Kim has only filed an administrative remedies request regarding a safety transfer on September 10, 2019, which was rejected at the regional level on February 10, 2020. Doc. 3-1 at 10. As set forth in this Report, Kim's claims concern BOP-related matters which must be filed and appealed through the above-described process, and Kim failed to do so. Even accepting Kim's submission of a BP-10 as evidence of his attempt to exhaust, Kim fails under both Turner steps. There is no argument or evidence Kim filed a BP-11, which he was required to do, even in the absence of a timely response at the BP-10 level. Additionally, based on Respondent's submissions, it appears the BOP's administrative remedies are available to Kim, despite any contentions he could potentially raise to the contrary. Consequently, the Court should **GRANT** Respondent's Motion to Dismiss and **DISMISS**

**without prejudice** Kim's claims based on his failure to exhaust his available administrative remedies prior to the filing of his § 2241 Petition. It is unnecessary to address the alternative grounds of Respondent's Motion.

## II.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Kim leave to appeal *in forma pauperis*. Though Kim has not yet filed a notice of appeal, it would be appropriate to address that issue in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Kim's Petition and Respondent's Motion to Dismiss, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Kim *in forma pauperis* status on appeal.

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss and **DISMISS** Kim's Petition **without prejudice** for failure to exhaust his administrative remedies. I further **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Kim leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint or any other filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the specificity requirement set out above will not be considered by the District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by

or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 30th day of June, 2021.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA